**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SARAH MOORE, on behalf of herself
and others similarly situated,

               Plaintiff,

       v.

ULTA SALON, COSMETICS &
FRAGRANCE, INC.,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 12-3224 FMO (AGRx)

**ORDER RE: MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT**

Having reviewed and considered all the briefing filed with respect to plaintiff Sarah Moore's Unopposed Motion for Preliminary Approval of Class Action Settlement (Dkt. 134-1, "Motion") and the oral argument presented at the hearing on December 8, 2016, the court concludes as follows.

**<u>INTRODUCTION</u>**

Plaintiff Sarah Moore ("plaintiff" or "Moore") filed this wage and hour class action lawsuit against Ulta Salon, Cosmetics, & Fragrance, Inc. ("defendant" or "Ulta") in the Los Angeles County Superior Court on March 2, 2012. (See Dkt. 1, Notice to Federal Court of Removal by Defendant Ulta [] ("NOR") at 2). Defendant removed the case to this court on April 12, 2012. (See id.). On September 13, 2012, plaintiff filed the operative First Amended Class Action Complaint ("FAC") on behalf of herself and individuals currently and formerly employed by Ulta as non-exempt employees. (See Dkt. 26, FAC at ¶ 15). In the FAC, plaintiff alleges that Ulta failed to compensate employees for time spent off the clock undergoing mandatory exit inspections. (See

id. at ¶ 19).  The FAC asserts claims for: (1) failure to pay overtime compensation under Cal. Labor Code § 1198, et seq.; (2) failure to compensate for all hours worked under Cal. Labor Code § 1198, et seq.; (3) failure to pay all wages due upon discharge under Cal. Labor Code § 201, et seq.; (4) failure to provide required meal periods under Cal. Labor Code § 226.7, et seq.; (5) failure to authorize or permit required rest periods under Cal. Labor Code § 226.7, et seq.; (6) failure to maintain required records under Cal. Labor Code § 1174.5, et seq.; (7) waiting time penalties under Cal. Labor Code § 203; and (8) unfair competition under Cal. Bus. & Prof. Code § 17200, et seq.  (See id. at ¶¶ 33-102).

On August 4, 2016, the parties reached a settlement "after over a year and a half of investigation and discovery, protracted negotiation, and ultimately mediation."  (See Dkt. 134, Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement ("Pl.'s Memo") at 20).  In the instant Motion, plaintiff seeks an order: (1) preliminarily approving the parties' settlement; (2) appointing a Settlement Administrator; (3) approving the form and content of the proposed notice plan and authorizing notice of the settlement to the class; and (4) setting a schedule and procedures for final approval of the proposed settlement.  (See id. at 1).

## **BACKGROUND**

Ulta sells and provides salon products and services in stores located throughout the United States, including approximately 69 stores within the state of California.  (See Dkt. 115, Court's Order of November 16, 2015, at 3).  With the exception of each store's General Manager, all store employees are hourly-paid, non-exempt employees.  (See id.).  Plaintiff contends that Ulta requires all hourly employees to undergo an exit inspection – also known as a "bag check" – each time they leave the store, whether for a rest break, meal break, or at the end of a shift.  (See id. at 3-4).  Ulta's bag check policy is contained in a number of company manuals and handbooks.  (See id. at 4).  For example, the "New Hire Orientation" section of the Ulta Employee Handbook, which applies throughout California, requires all employees to have their "[b]ag checked at the front" of the store before leaving, (see id. at 4-5), and states that employees must "[n]ever leave the building without being checked out by a manager[.]"  (Id. at 6).  Plaintiff asserts that Ulta has

systematically undercompensated employees through its bag check policies because they result in unpaid off-the-clock time spent inside the stores waiting for exit inspections.  (See id. at 8).

On November 16, 2015, the court granted plaintiff's Motion for Class Certification and certified the following class with respect to all of plaintiff's claims: "[c]urrent and former non-exempt employees who were employed by Ulta and who worked in any Ulta store in California at any time from March 2, 2008, through the conclusion of this action."  (See Dkt. 115, Court's Order of November 16, 2015, at 57).  The court divided the class into the following subclasses: "(a) [n]on-exempt workers who underwent exit inspections during their rest breaks[;] (b) [n]on-exempt workers who underwent off the clock exit inspections during their meal breaks[;] (c) [n]on-exempt workers who underwent off the clock exit inspections at the end of their shifts[; and] (d) [n]on-exempt workers who underwent off the clock exit inspections at the end of the closing shift."  (See id.).  The court appointed plaintiff as class representative and The Blanco Law Firm PC, Hobbs Law Group, and Wilson Trial Group as class counsel.  (See id.).

On August 4, 2016, the parties, "[a]fter a full day of mediation, at which they engaged in good-faith, arms-length bargaining, and realistically assessed the strengths and weaknesses of their positions," reached a settlement.  (See Dkt. 134, Pl.'s Memo at 5).  On November 4, 2016, the parties filed a Joint Stipulation of Settlement and Release memorializing the terms of the settlement.  (See id. at Exh. 1).  On December 16, 2016, the parties filed an Amended Joint Stipulation of Settlement and Release (Dkt. 140, "Settlement Agreement") in response to court's concerns as stated during the December 8, 2016, hearing.  (See Dkt. 138, Court's Order of December 9, 2016) (requiring the parties to file "a revised settlement agreement addressing the court's concerns as stated on the record").

The parties have defined the settlement class as "[a]ll persons employed in California by Ulta Salon, Cosmetics & Fragrance, Inc. on a nonexempt basis between March 2, 2008, through the date of preliminary Court approval of the Settlement or through January 27, 2017, whichever date first occurs."  (See Dkt. 140, Settlement Agreement at ¶ 14).  The parties estimate that the settlement class includes approximately 13,080 individuals.  (See id.).

3

Pursuant to the settlement, Ulta will pay $2,700,000 into a common fund, which will first be used to pay for attorney's fees, costs, service award, employer and employee payroll taxes, and claims administration expenses. (See Dkt. 140, Settlement Agreement at ¶ 26). Pending court approval, the settlement provides for an incentive payment to Moore of up to $30,000 for her service as class representative. (See id. at ¶ 34). The settlement also provides that Ulta will not object to class counsel's request for attorney's fees of no more than 30% of the common fund plus $30,000 in costs and expenses. (See id. at ¶ 42). The parties propose that the settlement be administered by a court-appointed claims administrator, CPT Group, Inc. ("CPT"), (see id. at ¶ 3), whose fees will be no more than $90,000. (See id. at ¶ 35). After all these payments are deducted, the remaining amount in the common fund (the "Net Settlement Amount") will be used to pay all timely and valid claims submitted by class members. (See id. at ¶¶ 26-27 & 30). If the court approves a service award, attorney's fees, and/or costs in an amount less than that provided by the settlement, the difference will revert to the Net Settlement Amount. (See id. at ¶¶ 34 & 42). CPT will then calculate proportional individual settlement awards for each settlement class member. (See id. at ¶ 30(a)(i)). The awards will be determined by dividing the total number of workweeks for the entire settlement class by the Net Settlement Amount. (See id.). This figure will then be multiplied by the number of workweeks worked by each settlement class member. (See id.). Ulta will provide CPT with all the necessary data relating to the settlement class. (See id.). Any payments that cannot be delivered will be redistributed to the other settlement class members or, if the amount to be redistributed is less than $25,000, donated to the Los Angeles County Bar Association's Counsel for Justice program under the cy pres doctrine. (See id. at ¶¶ 28-29).

## **LEGAL STANDARD**

Rule 23 provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval."[1]  Fed. R. Civ. P. 23(e). "If the [settlement] proposal would bind

---

[1]  "[I]n the context of a case in which the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement."  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir.

class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); Staton, 327 F.3d at 959 (A district court must determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable."). "The primary concern of [Rule 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Service Comm'n of the City & Cnty. of San Francisco, 688 F.2d 615, 624 (9th Cir. 1982), cert. denied 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, Hoffer v. City of Seattle, 506 U.S. 953 (1992) (internal quotation marks and citation omitted).

Approval of a class action settlement requires a two-step process – a preliminary approval followed by a later final approval. See West v. Circle K Stores, Inc., 2006 WL 1652598, *2 (E.D. Cal. 2006) ("[A]pproval of a class action settlement takes place in two stages."); Tijero v. Aaron Bros., Inc., 2013 WL 60464, *6 (N.D. Cal. 2013) ("The decision of whether to approve a proposed class action settlement entails a two-step process."). At the preliminary approval stage, the court "evaluate[s] the terms of the settlement to determine whether they are within a range of possible judicial approval." Wright v. Linkus Enters., Inc., 259 F.R.D. 468, 472 (E.D. Cal. 2009). Although "[c]loser scrutiny is reserved for the final approval hearing[,]" Harris v. Vector Mktg. Corp., 2011 WL 1627973, *7 (N.D. Cal. 2011), "the showing at the preliminary approval stage – given the amount of time, money and resources involved in, for example, sending out new class notices – should be good enough for final approval." Spann v. J.C. Penney Corp., 314 F.R.D. 312, 319 (C.D. Cal. 2016). "At this stage, the court may grant preliminary approval of a settlement and direct notice to the class if the settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the

---

2003). Because the court has already certified the settlement class, (see Dkt. 115, Court's Order of November 16, 2015, at 57), it need not address the appropriateness of class certification here.

range of possible approval." Id. (internal quotation marks omitted); Harris, 2011 WL 1627973, at *7 (same); Cordy v. USS-Posco Indus., 2013 WL 4028627, *3 (N.D. Cal. 2013) ("Preliminary approval of a settlement and notice to the proposed class is appropriate if the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.") (internal quotation marks omitted).

## DISCUSSION

I.    THE SETTLEMENT IS THE PRODUCT OF ARM'S-LENGTH NEGOTIATIONS.

"This circuit has long deferred to the private consensual decision of the parties." Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009).  The Ninth Circuit has "emphasized" that "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Id. (internal quotation marks omitted).  When the settlement is "the product of an arms-length, non-collusive, negotiated resolution," id., courts afford the parties the presumption that the settlement is fair and reasonable.  See Spann, 314 F.R.D. at 324 ("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery.") (internal citation omitted); In re Netflix Privacy Litig., 2013 WL 1120801, *4 (N.D. Cal. 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive arms' length negotiations conducted by capable and experienced counsel.").

Here, there is no evidence of collusion or fraud leading to, or taking part in, the settlement negotiations between the parties.  On the contrary, this action involved a contested Motion for Class Certification (Dkt. 64), which the court granted after briefing and oral argument from both parties.  (See Dkt. 115, Court's Order of November 16, 2015) (granting plaintiff's Motion for Class Certification).  With respect to discovery, class counsel "conducted a thorough investigation into the facts of this class action, including extensive discovery, review of relevant documents, . . .

deposing [Ulta]'s Person Most Knowledgeable, attending [the] deposition of Plaintiff, [and] interviewing at least 40 class members[.]"  (Dkt. 134, Pl.'s Memo at 4).  Class counsel also analyzed "more than two hundred thousand pages of payroll and time card records produced by [Ulta], including 8.5 million time card entries," and reviewed "37 declarations and supporting documents submitted by [Ulta]" in opposition to the Motion for Class Certification.  (See id.).  The parties also litigated multiple discovery motions.  (See Dkt. 47, Motion to Compel Further Responses by Defendant to Plaintiff's Request for Production; Dkt. 69, Defendant's Motion to Compel Compliance with Deposition Subpoenas and Request for Sanctions).

Moreover, the parties did not reach settlement until after they participated in mediation with Eugene Moscovitch, "a well-known and respected wage and hour class action mediator[.]" (See Dkt. 134-2, Declaration of Dennis P. Wilson ("Wilson Decl.") at ¶ 4).  Prior to the mediation, both parties "prepared and submitted confidential mediation briefs . . . which included a detailed analysis of liability, class certification and damages." (Id. at ¶ 5).  During the mediation, the parties "apprised each other of their respective factual contentions and legal theories and defenses, resulting in extensive arms-length negotiations taking place between the [p]arties." (See id. at ¶ 33).  Over the course of the discussions, "it became apparent that many issues would be highly disputed and could pose a risk to both parties in going forward with litigation." (Id. at ¶ 34).  The parties reached a settlement after they had "engaged in good-faith, arms-length bargaining, and realistically assessed the strengths and weakness[es] of their positions[.]" (Dkt. 134-2, Declaration of Timothy Hobbs ("Hobbs Decl.") at ¶ 8).  "The final decision to settle this matter was not only based on arguments on the merits, but [also] on the economic standing of the Defendants and the risks of going forward with appeals and further litigation."  (Dkt. 134-2, Wilson Decl. at ¶ 36).

Based on the evidence and record before the court, the court is persuaded that the parties thoroughly investigated and considered their own and the opposing parties' positions.  The parties had a sound basis for measuring the terms of the settlement against the risks of continued litigation, and there is no evidence that the settlement is "the product of fraud or overreaching by, or collusion between, the negotiating parties[.]"  Rodriguez, 563 F.3d at 965 (quoting Officers for Justice, 688 F.2d at 625).

II.     THE SETTLEMENT AMOUNT FALLS WITHIN A RANGE OF POSSIBLE JUDICIAL APPROVAL AND IS A FAIR AND REASONABLE OUTCOME FOR CLASS MEMBERS.

A.     Recovery for Class Members.

The settlement is fair, reasonable, and adequate, particularly when viewed in light of the litigation risks in this case.  As described above, the settlement class members will share in a $2,700,000 common fund, (see Dkt. 140, Settlement Agreement at ¶ 26), and each will be compensated in proportion to their injury.  (See id. at ¶ 30).  Based on class counsel's analysis, "the settlement would pay each worker for more than 4 minutes of uncompensated time for each shift worked."  (See Dkt. 134, Pl.'s Memo at 13).  Plaintiff has estimated that the wait time for an exit inspection, i.e., the amount of uncompensated time per shift, was "between seven and 30 minutes."  (Dkt. 115, Court's Order of November 16, 2015, at 11).  Under the circumstances, the court is persuaded that the settlement is fair and adequate for the settlement class.  See, e.g., In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (concluding that "the [s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, [was] fair and adequate"); Selk v. Pioneers Mem. Healthcare Dist., 159 F.Supp.3d 1164, 1175 (S.D. Cal. 2016) (approving wage and hour class action settlement where "the total settlement fund . . . represents between 26% to 50% of the best possible recovery"); Millan v. Cascade Water Services, Inc., 2016 WL 3077710, *7 (E.D. Cal. 2016) (approving wage and hour class action settlement providing "approximately one-quarter of the predicted maximum recovery amount" to the class); Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving wage and hour class action settlement where the "settlement fund represents between 25.4 percent and 8.5 percent of Defendant's total potential liability exposure").

The settlement here is even more compelling given the substantial litigation risks in this case.  For example, defendant's position was that "there was no uniform off the clock inspection policy, and if there were ever off the clock inspections, there was little to no wait, and the inspection took just moments[.]"  (See Dkt. 134, Pl.'s Memo at 13).  If defendant were to prevail on this position, the settlement class would recover little or nothing.  Further, the court must

balance "the risk of continuing litigation . . . against the certainty and immediacy of recovery from the Settlement Agreement." Schuchardt v. Law Office of Rory W. Clark, 314 F.R.D. 673, 681 (N.D. Cal. 2016) (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d at 458). This case has been ongoing for nearly five years. Thus, it is significant that the settlement class will soon receive "recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks omitted). In short, the risks of continued litigation are formidable, and the court takes these real risks into account. Weighed against those risks, and coupled with the delays associated with continued litigation, the settlement's benefits to the class easily fall within the range of reasonableness.

      B.    <u>Release of Claims</u>.

Beyond the value of the settlement, potential recovery at trial, and inherent risks in continued litigation, courts also consider whether a class action settlement contains an overly broad release of liability. See Newberg on Class Actions § 13:15, at p. 326 (5th ed. 2014) ("Beyond the value of the settlement, courts have rejected preliminary approval when the proposed settlement contains obvious substantive defects such as . . . overly broad releases of liability."); see, e.g., Fraser v. Asus Computer Int'l, 2012 WL 6680142, *3 (N.D. Cal. 2012) (denying preliminary approval of proposed settlement that provided defendant a "nationwide blanket release" in exchange for payment "only on a claims-made basis," without the establishment of a settlement fund or any other benefit to the class).

Here, plaintiffs and class members who do not exclude themselves from the settlement release "any and all claims . . . for, or which relate to or that reasonably could have arisen out of the allegations in the FAC[.]" (Dkt. 140, Settlement Agreement at ¶ 54). The release covers the time period from March 2, 2008, through the date of preliminary approval. (See id.). The release also provides for Moore to waive her rights under California Civil Code § 1542. (See id. at ¶ 55). The court finds that the release adequately balances fairness to absent class members with defendant's business interests in ending this litigation with finality. See Fraser, 2012 WL 6680142, at *4 (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its

next challenge" as well as the need to prioritize "[f]airness to absent class member[s]").

III.   THE SETTLEMENT AGREEMENT DOES NOT IMPROPERLY GRANT PREFERENTIAL
       TREATMENT TO THE CLASS REPRESENTATIVE.

"Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013). The Ninth Circuit has instructed "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." Id. The court must examine whether there is a "significant disparity between the incentive awards and the payments to the rest of the class members" such that it creates a conflict of interest. See id. at 1165. "In deciding whether [an incentive] award is warranted, relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998).

The settlement provides for an incentive payment to Moore of up to $30,000, but provides that the court may approve a payment of less than that amount, or none at all. (See Dkt. 140, Settlement Agreement at ¶ 34). If the court limits the incentive payment to less than $30,000 – or denies it altogether – the difference between $30,000 and the amount approved by the court will revert to the Net Settlement Amount and be distributed to the settlement class. (See id.).

Here, Moore took on substantial responsibility in litigating this case, and the class has benefitted from the time and effort she spent doing so. (See, e.g., Dkt. 134-2, Hobbs Decl. at ¶¶ 4-5 (explaining that Moore "has been intimately involved in the prosecution of this action and has cooperated fully with counsel to fulfill her fiduciary duties to the class[,]" including sitting for a full-day deposition, assisting counsel in preparing responses to voluminous written discovery, preparing for and attending mediation, and facing significant personal exposure as class representative)). According to Moore, she "signed the settlement because [she] believe[s] the Settlement obtained in this case on behalf of the Class is very fair and sufficient and reasonable in view of the facts [she] know[s] and ha[s] been made aware of, and due to the risk of going through further litigation." (See Dkt. 134-2, Declaration of Sarah Moore at ¶ 10). Finally, Moore

states that "the requested enhancement payment was not conditioned on [her] approval of the settlement agreement" and that she "would have approved the settlement agreement, irrespective of the enhancement payment [her] attorneys requested for [her]."  (Dkt. 140-1, Supplemental Declaration of Sarah Moore at ¶ 18).

Although Moore appears to have been a diligent class representative who took on substantial responsibility in litigating this case, the court believes that the requested $30,000 incentive payment is excessive.  See Staton, 327 F.3d at 948-49 (reversing approval of a class action settlement where incentive payments of up to $50,000 were disproportionately large in comparison to the average payment to class members).  Under the circumstances, the court tentatively finds that an incentive payment of $5,000 is appropriate.  See Dyer v. Wells Fargo Bank, N.A., 303 F.R.D. 326, 335 (N.D. Cal. 2014) (finding an incentive award of $5,000 presumptively reasonable).  The court may revisit the requested incentive payment upon final approval.  In short, because the parties agree that the settlement will remain in force regardless of whether Moore receives an incentive payment, and because the court intends to grant a presumptively reasonable incentive payment of $5,000, the court is persuaded that there is no conflict of interest between Moore and the absent class members.

IV.    PROPOSED CLASS NOTICE AND NOTIFICATION PROCEDURES.

Upon a settlement of a certified class, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1).  Federal Rule of Civil Procedure 23(c)(2) requires the "best notice that is practicable under the circumstances, including individual notice" of particular information.  See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

A class action settlement notice "is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir.), cert. denied, 543 U.S. 818 (2004) (internal quotation marks omitted).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 113 (2d

Cir.), cert. denied, 544 U.S. 1044 (2005).  Settlement notices must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." Weinberger v. Kendrick, 698 F.2d 61, 70 (2d Cir. 1982), cert. denied, 464 U.S. 818 (1983) (internal quotation marks and brackets omitted); see Trotsky v. Los Angeles Fed. Sav. & Loan Ass'n., 48 Cal.App.3d 134, 151-52 (1975) (same);  Wershba v. Apple Computer, Inc., 91 Cal.App.4th 224, 252 (2001) ("As a general rule, class notice must strike a balance between thoroughness and the need to avoid unduly complicating the content of the notice and confusing class members.").  The notice should provide sufficient information to allow class members to decide whether they should accept the benefits of the settlement, opt out and pursue their own remedies, or object to its terms.  See Wershba, 91 Cal.App.4th at 251-52. "[N]otice is adequate if it may be understood by the average class member." 4 Newberg on Class Actions § 11:53, at p. 167 (4th ed. 2013).

Here, the parties have selected, subject to court approval, CPT as the Claims Administrator. (See Dkt. 140, Settlement Agreement at ¶ 3).  Within thirty (30) days of the filing of this Order, CPT will provide notice to the settlement class members by sending a Notice of Pendency and Proposed Settlement of Class Action and Hearing on Final Approval of Settlement (Dkt. 134, Pl.'s Memo at Exh. B ("Notice")) via first class mail. (See Dkt. 140, Settlement Agreement at ¶¶ 44-45). Along with the Notice, CPT will enclose a Request for Exclusion Form (Dkt. 134, Pl.'s Memo at Exh. C ("Opt-Out Form")) and a Claim Form and Release (id. at Exh. D ("Claim Form")). (See id. at 18).  Ulta will provide CPT with each settlement class member's last known address, which CPT will use for the initial mailing. (See Dkt. 140, Settlement Agreement at ¶ 45).  For any Notice returned as undeliverable, CPT will make one commercially reasonable effort to discover a current address for the settlement class member and will re-send the Notice within five days if another address is found. (See id. at ¶ 46).  Settlement class members will have sixty (60) days from the date the Notice is mailed to postmark the Claim Form or Opt-Out Form. (See id. at ¶ 40).  At least ten calendar days prior to the final approval hearing, class counsel will provide the court with a declaration from CPT regarding due diligence and proof of mailing with respect to the Notice, Claim Form, and Opt-Out Form. (See id. at ¶ 48).

The Notice adequately describes the nature of the action, including the class claims and Ulta's defenses, as well as the relief provided by the settlement. (See Dkt. 134, Notice at 1-4); Fed. R. Civ. P. 23(c)(2)(B)(i) & (iii).  The class definition is conspicuously included in a section entitled, "The Settlement Class." (See Dkt. 134, Notice at 4-5); Fed. R. Civ. P. 23(c)(2)(B)(ii). The Notice also includes an explanation laying out the class members' options under the settlement, i.e., they may exclude themselves, object, or do nothing. (See Dkt. 134, Notice at 5-7); Fed. R. Civ. P. 23(c)(2)(B)(v)-(vi).  The Notice informs class members how to submit a Claim Form or Opt-Out Form, describes the procedures for submitting questions or objections regarding the settlement, and provides all the relevant deadlines, including the date of the final approval hearing. (See Dkt. 134, Notice at 5-8).  If class members choose to object to the settlement, the Notice explains that they may do so by submitting written objections and may attend the final approval hearing with or without an attorney.  (See id. at 7); Fed. R. Civ. P. 23(c)(2)(B)(iv).  Finally, the Notice explains that class members who do not exclude themselves will release all claims that relate to the claims or issues asserted in this action.  (See  Dkt. 134, Notice at 4); Fed. R. Civ. P. 23(c)(2)(B)(vii).

Based on the foregoing, the court finds that the procedure for providing notice and the content of the class notice constitute the best practicable notice to class members and  complies with the requirements of due process.  See Fed. R. Civ. P. 23(c)(2)(B).  The court finds that there is no alternative method of distribution that would be more practicable here, or any more reasonably likely to notify the class members.

V.      SUMMARY.

The court's preliminary evaluation of the Settlement Agreement "does not disclose grounds to doubt its fairness[,] . . . such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval[.]"  In re Vitamins Antitrust Litig., 2001 WL 856292, *4 (D.D.C. 2001) (quoting Manual for Complex Litigation § 30.41 (3d ed. 1999)); see also Spann, 314 F.R.D. at 323 (same); In re NVIDIA Corp. Derivative Litig., 2008 WL 5382544, *2 (N.D. Cal. 2008) (same).

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1.   Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement **(Document No. 134)** is **granted** upon the terms and conditions set forth in this Order.

2.   The court preliminarily finds that the terms of the Settlement Agreement (Dkt. 140) are fair, reasonable, adequate, and comply with Rule 23(e) of the Federal Rules of Civil Procedure.

3.   The proposed manner of the notice of settlement set forth in the Settlement Agreement constitutes the best notice practicable under the circumstances and complies with the requirements of due process.

4.   The court approves the form, substance, and requirements of the: Notice (Dkt. 134, Exh. B); Opt-Out Form (Dkt. 134, Exh. C); and Claim Form (Dkt. 134, Exh. D).

5.   The parties shall carry out the settlement and claims process according to the terms of the Settlement Agreement.

6.   CPT Group ("CPT") is hereby appointed as the Settlement Administrator.   Promptly following entry of this order, CPT will prepare final versions of the Notice, Opt-Out Form, and Claim Form, incorporating the relevant dates and deadlines set forth in this Order and the Settlement Agreement, and will commence the notice process, in accordance with the Settlement Agreement.   Notice shall commence no later than **January 28, 2017**.

7.   Any class member who wishes to: (a) object to the settlement, including the requested attorney's fees, costs, and incentive payment; and/or (b) exclude him or herself from the settlement must file his or her objection to the settlement or request for exclusion (i.e., the Opt-Out Form) no later than **March 29, 2017**, in accordance with the Settlement Agreement, Notice and/or Opt-Out Form.

8.   Any class member who wishes to appear at the final approval (fairness) hearing, either on his or her own behalf or through an attorney, to object to the settlement, including the requested attorney's fees, costs, and incentive payment, shall, no later than **March 29, 2017**, file with the court and serve on class counsel and defendants a Notice of Intent to Appear at Fairness Hearing ("Notice").   The Notice shall indicate whether the class member will appear on his or her own behalf or through an attorney.

9.  A final approval (fairness) hearing is set for **May 18, 2017**, at **10:00 a.m.** in Courtroom 6D of the First Street Courthouse, to consider the fairness, reasonableness, and adequacy of the settlement as well as the award of attorney's fees and costs to class counsel, and an incentive payment to the class representative.

10.  Plaintiff shall file a motion for the award of a class representative incentive payment and attorney's fees and costs no later than **March 20, 2017**, and notice it for hearing for the date set forth in paragraph 9 above.  Any objection to the motion for the award of a class representative incentive payment and attorney's fees and costs, by class members, shall be filed by the deadline set forth in paragraph 7 above.  In the event any objections to the motion are filed, class counsel shall, no later than **May 1, 2017**, file a reply addressing the objections.

11.  Plaintiff shall, no later than **May 1, 2017**, file and serve a motion for final approval of the settlement and a response to any objections to the settlement.  The motion shall be noticed for hearing on the date set forth in paragraph 9 above.  Defendant may file and serve a memorandum in support of final approval of the settlement or in response to objections no later than **May 1, 2017**.

Dated this 29th day of December, 2016.

/s/
Fernando M. Olguin
United States District Judge