WILSON TRIAL GROUP
Dennis P. Wilson (Cal. Bar No. 133288)
Email: wilsontrialgroup@att.net
3322 W. Victory Boulevard
Burbank, California 91505
Telephone: (818) 843-1788

Attorneys for Plaintiff and the Class

ADDITIONAL COUNSEL ON NEXT PAGE

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH MOORE, on behalf of herself and on behalf of all others similarly situated,<br><br>Plaintiff,<br>vs.<br>ULTA SALON, COSMETICS & FRAGRANCE, INC., a Delaware Corporation;<br><br>Defendants. | Case No: 2:12-CV-03224-FMO (AGRx)<br>Hon. Fernando M. Olguin<br><br>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**[FILED CONCURRENTLY WITH:**<br>**(1) NOTICE OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br>**(2) DECLARATIONS IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT;**<br>**(3) [PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION**<br><br>Date:     July 6, 2017<br>Time:    10:00 a.m.<br>Judge:   Hon. Fernando Olguin<br>Dept.:    6D |

THE BLANCO LAW FIRM, PC
Alejandro D. Blanco (Cal. Bar No. 133073)
Email: ablanco@theblancolawfirm.com
535 N Brand Blvd Ste 700
Glendale, CA 91203
Telephone: (877) 238-7635

HOBBS LAW GROUP
Timothy Hobbs (Cal. Bar No. 268532)
Email: Tim@hobbslawgroup.com
1340 E. Route 66, Suite 204
Glendora, CA 91740
Tel: (626) 782-4520
Fax: (626) 782-6379

Attorneys for Plaintiff and the Class

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................. 1
II. NATURE OF CASE AND PROCEDURAL HISTORY ................................ 1
    A. Nature of Case ........................................................................................ 1
    B. Discovery ................................................................................................ 2
    C. Mediation ................................................................................................ 3
III. SUMMARY OF SETTLEMENT TERMS ..................................................... 3
IV. NOTICE OF THE SETTLEMENT AND THE CLASS' RESPONSE .......... 6
V. THE SETTLEMENT MERITS FINAL APPROVAL .................................... 6
    A. The Settlement Is Fair, Reasonable, and Adequate. ................................ 9
        1. The Value of the Settlement Supports Approval. .......................... 9
        2. The Fairness of the Distribution Supports Approval. ................. 12
VI. CONCLUSION ............................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) ................................. 7

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) ................. 7

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979) ......................................... 9

*Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ............................................................... 7

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ........................................ 7

*In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ........................................... 9

*Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ............................................... 7, 8

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) .................................. 6

## STATUTES

Fed. R. Civ. P. 23(a) ....................................................................................................... iii, 7

Fed. R. Civ. P. 23(b) ....................................................................................................... iii, 7

Fed. R. Civ. Proc. 23(e) ............................................................................................... iii, 1, 7

Manual for Complex Litigation § 1.46, at 53-55 (West 1977) ........................................... 7

## OTHER AUTHORITIES

Schwarzer, Tashima & Wagstaffe, *Cal. Prac. Guide: Fed. Civ. Pro. Before Trial* § 10:571 (The Rutter Group 2011) ................................................................................ 8

Manual for Complex Litigation § 1.46, at 53-55 (West 1977) ........................................... 8

## I. INTRODUCTION

Plaintiff Sarah Moore ("Plaintiff"), on behalf of herself and others similarly situated ("Class Members"), brought a wage and hour class action against Defendant Ulta Salon, Cosmetics & Fragrance, Inc. ("Ulta"), and Does 1-100. Plaintiff and Ulta (collectively, the "Parties") have reached a settlement of Plaintiff's claims.

With this endorsement of the Settlement by the Class Members, Plaintiff Sarah Moore now moves for final approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure.

## II. NATURE OF CASE AND PROCEDURAL HISTORY

### A. Nature of Case

On March 2, 2012, Plaintiff Sarah Moore filed a proposed Class Action Complaint against Defendant on behalf of herself and all individuals who hold or held the position of hourly employee who are employed by, or were formerly employed by, Defendant, and any subsidiaries or affiliated companies within the State of California in the period within four (4) years prior to the filing of this action and continuing to the present. The Complaint specifically alleged the following causes of action: Failure to Pay Overtime Compensation; Failure to Compensate for all Hours Worked; Failure to Pay Wages Upon Discharge; Failure to Provide Meal Periods; Failure to Provide Rest Periods; Failure to Maintain Accurate Records; Waiting Time Penalties pursuant to Labor Code Section 203; and Unfair Competition in Violation of Business and Professions Code Section 17200. On April 10, 2012, Defendant filed and served an Answer to Plaintiff's Complaint and removed the matter to federal court.

On September 13, 2012, Plaintiff filed a First Amended Complaint which likewise specifically alleged the following causes of action: Failure to Pay Overtime Compensation; Failure to Compensate for all Hours Worked; Failure to Pay Wages upon Discharge; Failure to Provide Meal Periods; Failure to Provide Rest Periods; Failure To Maintain Records; Waiting Time Penalties pursuant to Labor Code Section

203; and Unfair Competition in Violation of Business and Professions Code Section 17200 (the "FAC").

On November 16, 2015, the Court granted Plaintiff's Motion for Class Certification and certified a class of "current and former non-exempt employees who were employed by Ulta and who worked in any Ulta store in California at any time from March 2, 2008, through the conclusion of this action." Doc. No. 115.

Defendant has denied all allegations, asserting that it fully complies with applicable laws. Defendant also disputes that Plaintiff's claims, or any of them, are appropriate for class treatment, and has indicated that any off the clock waiting time was not uniform among class members, and was de-minimis and otherwise non-compensable.

### B. Discovery

The parties exchanged Rule 26 initial disclosures and subsequently exchanged additional information informally. In addition, Plaintiff was deposed.

Class Counsel has conducted a thorough investigation into the facts of this class action, including extensive discovery, review of relevant documents, and have diligently pursued an investigation of Class Members' claims against ULTA, including deposing ULTA's Person Most Knowledgeable, attending deposition of Plaintiff, interviewing at least 40 class members, analyzing countless pages of payroll and time card records produced by Defendant ULTA, including 8.5 million time card entries, reviewing 37 declarations and supporting documents submitted by Defendant ULTA in support of Defendants' opposition to Motion for Class Certification. Based on their own independent investigation and evaluation, Class Counsel is of the opinion that the Settlement with ULTA for the consideration and on the terms set forth in this Stipulation of Settlement is fair, reasonable, and adequate and is in the best interest of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, defenses asserted by Defendants, and numerous potential appellate issues. ULTA and ULTA's counsel also agreed to the settlement terms after a lengthy

1  mediation with a trained mediator.  As such Plaintiff believes the settlement is fair to
2  the Settlement Class.
3      The Class Representative has vigorously prosecuted this case, and Defendant as
4  vigorously contested it.  The Plaintiff and her attorneys believe that they have engaged
5  in sufficient discovery and investigation, both formal and informal, to assess the
6  relative merits of the claims of the Class Representative and of Defendant's defenses
7  to them.
8      Class Counsel analyzed the information provided by Defendant, and vetted the
9  information during meetings with Plaintiff and interviews with many Class Members in
10 California. Hobbs Decl., ¶8.  Plaintiff's time of service with Defendants provided her
11 with considerable detailed information about the claims asserted, which they shared
12 with their counsel.  Hobbs Decl., ¶5.  All of this information, obtained through
13 discovery and informal exchanges, provided the Plaintiff with a substantial basis to
14 assess the strengths and weaknesses of each party's respective positions prior to the
15 mediation.

### C. Mediation

17 The Parties mediated on August 4, 2016, with Eugene Moscovitch, who has
18 significant experience in mediating California wage and hour cases.  After a full day of
19 mediation, at which they engaged in good-faith, arms-length bargaining, and
20 realistically assessed the strengths and weakness of their positions, the parties reached
21 the Settlement.  Wilson Decl., ¶¶ 28-30,  Hobbs Decl., ¶¶ 9, 10. .

### III. SUMMARY OF SETTLEMENT TERMS

23 In the Memorandum of Understanding, the parties have agreed to a settlement,
24 whereby Defendant will pay on a non-segregated and claims-made basis a maximum of
25 $2,790,000, including all attorneys' fees, costs, enhancement awards, the employee
26 portion of payroll taxes, the employer portion of payroll taxes (FICA, FUTA, etc.) and
27 claims administration expenses (the "Maximum Settlement Amount"); under no
28 condition will ULTA's liability exceed the Maximum Settlement Amount. At no time

shall ULTA have the obligation to segregate the funds comprising the Maximum Settlement Amount, and ULTA shall retain exclusive authority over, and the responsibility for, those funds. All claims submitted by Class Members, and all attorneys' fees, costs, enhancement awards, the employee portion of payroll taxes, the employer portion of payroll taxes (FICA, FUTA, payroll taxes, etc.), and claims administration expenses shall be paid out of the Maximum Settlement Amount.

The Settlement was administered by a Court-appointed Claims Administrator, CPT Group, an independent and experienced third-party claims administration company. The Maximum Settlement Amount includes:

- attorneys' fees of Class Counsel not to exceed $697,500 (twenty five percent (25%) of the Maximum Settlement Amount, as approved by the Court;
- legal costs and expenses not to exceed $30,000, as approved by the Court;
- service payments to the Plaintiff not to exceed $5,000, as approved by the Court;
- claims administrator costs, not to exceed $112,500, as approved by the Court; and
- Defendant's portion of FICA, FUTA, and all other state and federal payroll taxes.

The balance that remained after the above items are deducted is referred to as the Net Settlement Amount. The Net Settlement Amount will be distributed on a claims-made basis, and no fluid recovery fund shall be created or maintained.

The individual settlement awards were determined by dividing the total number of workweeks for the entire Settlement Class by the Settlement Class Net Settlement Amount, resulting in the Workweek Value; and then multiplying the Workweek Value by the number of workweeks worked by each Settlement Class Member ("The Individual Hourly Employee Settlement Award.") And each Class Member who did

1    not opt out will be entitled to a proportionate share of the Net Settlement Amount
2    that is the same as that Class Member's proportionate share of the total workweek
3    equivalents for the entire class.
4        The Settlement Administrator has used records provided by Defendants to
5    locate class members and determine the amount that each Class Member is eligible to
6    receive. The Claims Administrator has calculated an award for each individual.  The
7    members of the Class who did not opt out and whose Notices were not returned as
8    undeliverable were not required to submit claims.
9        Any Class Member who provides a timely request for exclusion to the
10   Settlement Administrator will be excluded from the Settlement.  Any Class Member
11   who wants to be excluded may be excluded from the Settlement by providing a timely
12   notice to the Settlement Administrator.  To date there have been 20 valid requests for
13   exclusion.  The period to request exclusion expires June 16, 2017.  Thompson Decl.,
14   ¶14.
15       Each Class Member, except for those who opted out or whose Notices were
16   returned as undeliverable and who were not located after reasonable efforts by the
17   Administrator to locate those Class Members will be entitled, upon final approval of
18   the Settlement, to a proportionate share of the Net Settlement Amount that is the
19   same as that Class Member's proportionate share of the total workweek equivalents
20   for the entire class.
21       The parties may seek review of the Claims Administrators' calculations, Plaintiff
22   does not anticipate any issues in that regard.  Although the Settlement allowed for
23   Class Members who do not exclude themselves from the Settlement to object to the
24   fairness, reasonableness or adequacy of the Settlement or any award of fees or
25   expenses, the Administrator has reported that no objections were received.   The
26   Notice approved by the Court fully explained the opt-out and objection procedures.
27       Ulta provided the Settlement Administrator with each Class Member's last
28   known address, and the Settlement Administrator used the last known addresses for

1  the initial mailing.  The Class Members had 60 days from the date of mailing to request
2  exclusion (opt-out).  Notices returned to the Settlement Administrator as being
3  undeliverable before the claim filing/opt-out deadline, were re-sent to the forwarding
4  address if one is provided by the United States Postal Service.  Where no forwarding
5  address was provided, the Settlement Administrator implemented skip tracing
6  individual names to obtain additional addresses. Thompson Decl., ¶¶ 5-10.

7        Within 60 days of receiving final court approval of the settlement, Defendants
8  will deliver to the Claims Administrator the Maximum Settlement Amount.  Plaintiff
9  and her attorneys are of the opinion that the Settlement reached is fair, reasonable,
10 adequate, and is in the best interest of the Class in light of all known facts and
11 circumstances, including the significant risks and delays of litigation that are presented
12 by the defenses and potential appellate issues that Defendants may assert.  Wilson
13 Decl., ¶¶ 29-31, Hobbs Decl., ¶16.  Class Counsel has fully advised the Representative
14 Plaintiff of the Settlement Agreement and represents that she fully approved of and
15 consented to it.  Wilson Decl., ¶43.

16 **IV.  NOTICE OF THE SETTLEMENT AND THE CLASS' RESPONSE**

17       Pursuant to the Preliminary Approval Order, the Settlement Administrator
18 mailed the court-approved Class Notice Packet to all 16,227 Class Members at their
19 last known home address.  Thompson Decl., ¶ 7.  As of June 13, 2017, the claims
20 administrator had received only 20 requests to be excluded from the settlement.
21 Thompson Decl., ¶ 12.  Of the 16,227 total class members, 15,950 had valid mailing
22 addresses, and only 20 requested exclusion, a participation rate of 98.3 %.  Thompson
23 Decl., ¶ 14.

24 **V.  THE SETTLEMENT MERITS FINAL APPROVAL**

25
26       The law favors settlement.  This is particularly true in class actions where
   substantial resources can be conserved by avoiding the time, cost, and rigors of formal
27 litigation.  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).
28

A court may approve a settlement of a class action only when it finds after a hearing that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). Judicial review of a class action settlement entails a two-step process. "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting Manual for Complex Litigation § 1.46, at 53-55 (West 1977)), *overruled in irrelevant part*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. At the second stage of the approval process, after class members have had an opportunity to object to the settlement, the court makes a final determination whether the settlement is "fair, reasonable and adequate" under Rule 23(e)(2). *Id.* at 313.

In reviewing a class action settlement, a court undertakes two fundamental inquiries. "First, the district court must assess whether a class exists ..." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In other words, the court must determine that the lawsuit qualifies as a class action under Rule 23. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)). Second, the court must determine whether the settlement is "fair, adequate, and reasonable." *Staton*, 327 F.3d at 952. When parties reach a settlement agreement prior to class certification, "courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Acosta v. Trans Union LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) (quoting *Staton*, 327 F.3d at 952).

No single criterion determines whether a class action settlement meets the requirements of Rule 23(e). The Ninth Circuit has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors

are most important. See *Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice, 688 F.2d* at 625 (citation omitted). The ultimate touchstone, however, is whether "class counsel adequately pursued the interests of the class as a whole." *Staton,* 327 F.3d at 961. As the Ninth Circuit explained in Officers for Justice, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective. Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice, 688 F.2d* at 625. Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fees and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Staton*, 327 F.3d at 961.

Here, the parties reached a non-collusive settlement after sufficient discovery enabled counsel to form educated assessments about the strength of Plaintiff's claims, the validity of Defendants' defenses, the costs of proving the claims on a classwide basis, and the difficulties of obtaining a statistically valid sampling of the 13,000 plus member class, as well as the value of the case.

Because overcoming Defendant's defenses, and establishing damages on a class-wide basis through statistical modeling posed difficult and expensive hurdles for Plaintiff that justified compromise of their claims, the Settlement falls well within the range of reasonable outcomes and merits approval under Rule 23(e).

### A. The Settlement Is Fair, Reasonable, and Adequate.

#### 1. The Value of the Settlement Supports Approval.

To estimate the value of continuing to litigate, Plaintiff considered the inherent risks, the potential magnitude of a recovery, and the probable length of the delay in payment. Here, there were approximately 4,250,000 shifts within the class period. Assuming, an average hourly rate of pay of approximately $9.00 per hour, the settlement would pay each worker for more than 4 minutes of uncompensated time for each shift worked. Wilson Decl., ¶ 42, Hobbs Decl., ¶9. Given Defendant's position that there was no uniform off the clock inspection policy, and if there were ever off the clock inspections, there was little to no wait, and the inspection took just moments, the settlement appears to be more than reasonable.

##### a. The Risks Inherent in Continued Litigation Are Great.

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation. *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[T]he present value of the damages Plaintiff would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.") (citation omitted and internal quotation marks); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 617 (N.D. Cal. 1979).

Here there were significant risks in litigation. Defendants maintained the inspection took mere moments, and was able to garner substantial evidence in support of their position in the form of several dozen employee declarations. Defendants also presented evidence that each manager was responsible for implementing the bag check protocol, and that many managers conducted inspections prior to clock out, and further, many of the managers who conducted inspections after clock out would adjust time cards to compensate for the time spent during inspection. There was also virtually no documentary evidence concerning the actual inspection time. The foregoing may

1 have been sufficient to successfully decertify the class prior to trial, or alternately to
2 require plaintiffs to individually prove damages, which posed a potentially fatal threat
3 to the viability of this case as a class action. Wilson Decl., ¶ 40, Hobbs Decl., ¶ 13

4     The uncertainty of prevailing at trial strongly supports final approval. The
5 Settlement affords the Class prompt and substantial relief, while avoiding significant
6 legal and factual hurdles that otherwise may have prevented the Class from obtaining
7 any recovery at all.  The outcome of trial and any attendant appeals, were inherently
8 uncertain.   Wilson Dec., ¶ 40, Hobbs Dec., ¶ 13

9     All in all, the Settlement achieved confers a substantial benefit on Plaintiff and
10 the Class Members, whereas proceeding with litigation would impose significant risk
11 of no recovery as well as ongoing, substantial expense.  If Settlement were not
12 achieved, continued litigation of Plaintiff's and the Class' claims in this action would
13 require substantial additional preparation and discovery.  It ultimately would involve
14 the deposition up to 100 class members, and presentation of numerous witnesses; the
15 consideration, preparation and presentation of documentary evidence; and the
16 preparation and analysis of expert reports.  Specifically, proof of liability and damages
17 would both hinge on statistical sampling of the class. Hobbs Dec., ¶ 11.

18     According to Plaintiff's statistical consultant, to withstand challenge, a statistical
19 modeling of damages would require a sample size of between 200-300 respondents,
20 who must be interviewed or provide a declaration, with a participation rate in excess of
21 90%.  Clearly, there are immense logistical burdens which would be posed to Plaintiff
22 and the class to obtain the information from which a statistically valid sampling could
23 be obtained.  If this case were to go to trial, costs would be astronomical.  Hobbs
24 Dec., ¶ 11.

25     By contrast, the Settlement will yield a prompt, certain, and very substantial
26 recovery for the Class.  Such a result will benefit the parties and the Court.  For these
27 reasons, Class Counsel believe this is an excellent Settlement for Plaintiff and the
28 Class. Wilson Dec., ¶¶11-13, 45,  Hobbs Dec., ¶¶8, 16.

### b. The Amount Offered in the Settlement Supports Approval.

Defendant has agreed to pay a maximum of $2,790,000 to settle this lawsuit. Even assuming that Defendant had no defenses to Plaintiff's claims (in fact, they contend they have several strong defenses to all claims), the Settlement would represent a reasonable approximation of potential recovery.

The Settlement's adequacy must be judged as "'a yielding to absolutes and an abandoning of highest hopes ...' Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation ..." *Officers for Justice*, 688 F.2d at 624 (citation omitted; second alteration in original). Therefore, considering the potential recovery, the probability of lengthy litigation in the absence of settlement, and the risks that the Class would not have been able to succeed at trial and that a jury could award lower damages, the amount of the Settlement is well within the range of reasonableness.

At mediation Plaintiff's counsel provided sampling evidence that the inspection process typically took approximately 5 minutes. Extended across the more than 4.25 million shifts during the class period, the five minute average wait equates to approximately $3,205,690 assuming an average rate of pay of $9.00 per hour. The settlement of $2,790,000 represents a substantial benefit to the class because the settlement closely approximates the Class's likely economic damages in spite of the fact that there is virtually no documentary evidence concerning the time the exit inspection process took. Hobbs Dec., ¶¶14,15.

### c. Earlier Payment Supports Approval.

This Court also should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. If the litigation were to continue, and even if Plaintiff were to prevail, payment would occur at some indeterminate time in the future. Even though trial is not presently scheduled,

1  if Defendants were not to prevail at trial, the company would be determined to appeal
2  from all adverse rulings.  An appeal, of course, might last another year or two, or even
3  more.  If the appellate court were to overturn the verdict, the case might be remanded
4  to the trial court for further proceedings which, again, could last indefinitely.
5       This delay and the risks inherent in continued litigation led Plaintiff to conclude
6  that fighting the lawsuit to the bitter end was not the wise course.  The Settlement calls
7  for $2,790,000 (less approved payments to Plaintiff, Class Counsel, the Settlement
8  Administrator, and taxes) to be paid to the Class Members now.  Defendant disputes
9  all claims in their entirety, and has provided substantial evidence in support of their
10 position, so if the litigation continues, there is a very real risk that Class Members may
11 receive nothing at all or may receive much less at some distant time in the future.

12         **2.    The Fairness of the Distribution Supports Approval.**
13      The parties not only believe that the total Settlement is fair to the Class, but
14 Plaintiff contend and Defendant does not contest that the proposed awards of
15 $697,500 in attorney's fees and $30,000 in reimbursed litigation expenses and $5,000 to
16 the Class Representative to reimburse for time, effort, and risk demanded by this
17 litigation are fair and reasonable.  The Court has also preliminarily approved the
18 Settlement Administrator's reasonable costs and expenses not to exceed $112,500 to
19 be paid out of the Maximum Settlement Amount.

20         **a.    The Plan of Allocation for Distributing the**
21                   **Settlement to the Class Members.**

22      The plan for allocating and distributing the Settlement to the Class Members is
23 set forth in detail in the Stipulation of Settlement.  The Defendant has Defendant
24 provided the Settlement Administrator with the number of workweek equivalents for
25 each Class Member, based on payroll records.  Each Class Member's portion will be a
26 *pro rata* share based upon the total number of workweek equivalents for the entire
27 Class during the class period.  The Parties believe that this method for determining
28 how much each member should receive possesses the dual advantages of efficiency

and fairness. Any remaining funds will be re-divided among the class, and a Cy-Pres fund has been identified for any residual that is too small to justify a re-division.

### b. Settlement Administration.

CPT Group is an experienced administrator of class action settlements, including those of employment claims, and the parties believe it will faithfully and competently carry out its obligations to administer their Settlement.

The Settlement Administrator's duties with respect to the Settlement are set forth in the Settlement. Reasonable fees and expenses not to exceed $112,500 will be paid from the Maximum Settlement Amount.

### c. Employer Taxes.

The Settlement Administrator will withhold payroll tax from the portion of the Settlement designated as compensation for unpaid wages, and issue a W-2 Form with respect to the portion of the Settlement designated as settlement for Class Members' claims for interest on unpaid wages and civil and statutory penalties.

## VI. CONCLUSION

The Settlement is fair, reasonable, and adequate in all respects and provides significant value to the individual class members. Accordingly, Plaintiff and her attorneys request that this Court grant their Joint Motion for Final Approval of the Settlement in its entirety, and adopt the proposed order submitted with this motion.

June 14, 2017                                    WILSON TRIAL GROUP

By: _____
DENNIS P. WILSON
Attorneys for Plaintiffs
SARAH MOORE, et al

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to this action; my business address is 1340 E. Route 66, Suite 204, Glendora, CA 91740.

On June 14, 2017, I served the foregoing documents described as: **MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT** on the interested parties by:

**LITTLER MENDELSEN, PC**
John Kloosterman, Esq.
Kai-Ching Cha, Esq.
Alexis Sohrakoff, Esq.
650 California Street, 20th Floor
San Francisco, CA 94108-2693
Tel: (415) 433-1940
*Attorneys for Defendant*

**THE BLANCO LAW FIRM, PC**
Alejandro D. Blanco
535 N Brand Blvd Ste 700
Glendale, CA 91203
Telephone: (877) 238-7635
*Attorneys for Plaintiffs*

**WILSON TRIAL GROUP**
Dennis P. Wilson
3322 W. Victory Boulevard
Burbank, California 91505
Telephone: (818) 843-1788
*Attorneys for Plaintiffs*

[X] (**BY AUTOMATIC SERVICE**) The Notice of Electronic Filing will be generated by CM/ECF and electronically mailed to the offices of the consenting addressees as stated above.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on June 14, 2017, at Glendora, CA 91740.  _____/S/_____
                                                                                            Timothy Hobbs