# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH MOORE, on behalf of herself and others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>ULTA SALON, COSMETICS & FRAGRANCE, INC.,<br><br>  Defendant. | Case No. CV 12-3224 FMO (AGRx)<br><br>**ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT; APPROVAL OF ATTORNEY'S FEES, COSTS & SERVICE AWARD** |

Having reviewed and considered the Unopposed Motion for Final Approval of Class Action Settlement (Dkt. 149, "Motion") and Unopposed Motion for Attorneys' Fees and Costs and Class Representative Enhancement (Dkt. 146, "Fees Motion"), and the oral argument presented during the final fairness hearing held on July 7, 2017, the court concludes as follows.

## **INTRODUCTION**

Plaintiff Sarah Moore ("plaintiff" or "Moore") filed this wage and hour class action against Ulta Salon, Cosmetics, & Fragrance, Inc. ("defendant" or "Ulta") in the Los Angeles County Superior Court on March 2, 2012. (See Dkt. 1, Notice to Federal Court of Removal by Defendant Ulta [] ("NOR") at 2). Defendant removed the case to this court on April 12, 2012. (See id.). On September 13, 2012, plaintiff filed the operative First Amended Class Action Complaint ("FAC") on behalf of herself and individuals currently and formerly employed by Ulta as non-exempt

employees. (See Dkt. 26, FAC at ¶ 15). Plaintiff alleges that Ulta failed to compensate employees for time spent off the clock undergoing mandatory exit inspections. (See id. at ¶ 19). Plaintiff asserts claims for: (1) failure to pay overtime compensation, Cal. Labor Code § 1198, et seq.; (2) failure to compensate for all hours worked, Cal. Labor Code § 1198, et seq.; (3) failure to pay all wages due upon discharge, Cal. Labor Code § 201, et seq.; (4) failure to provide required meal periods, Cal. Labor Code § 226.7, et seq.; (5) failure to authorize or permit required rest periods, Cal. Labor Code § 226.7, et seq.; (6) failure to maintain required records, Cal. Labor Code § 1174.5, et seq.; (7) waiting time penalties, Cal. Labor Code § 203; and (8) unfair competition, Cal. Bus. & Prof. Code § 17200, et seq. (See id. at ¶¶ 33-102).

On November 16, 2015, the court granted plaintiff's Motion for Class Certification and certified the following class with respect to all of plaintiff's claims: "[c]urrent and former non-exempt employees who were employed by Ulta and who worked in any Ulta store in California at any time from March 2, 2008, through the conclusion of this action." (Dkt. 115, Court's Order of November 16, 2015, at 57). The court divided the class into the following subclasses: "(a) [n]on-exempt workers who underwent exit inspections during their rest breaks[;] (b) [n]on-exempt workers who underwent off the clock exit inspections during their meal breaks[;] (c) [n]on-exempt workers who underwent off the clock exit inspections at the end of their shifts[; and] (d) [n]on-exempt workers who underwent off the clock exit inspections at the end of the closing shift." (See id.). The court appointed plaintiff as class representative and The Blanco Law Firm PC, Hobbs Law Group, and Wilson Trial Group as class counsel. (See id.).

On August 4, 2016, the parties settled the case. (See Dkt. 141, Court's Order of December 29, 2016 ("Preliminary Approval Order" or "PAO") at 3). On December 29, 2016, the court granted preliminary approval of the settlement, appointed CPT Group ("CPT") as the settlement administrator, and directed CPT to provide notice to class members. (See id. at 14). Plaintiff now seeks: (1) final approval of the settlement; (2) attorney's fees and costs; and (3) a service award for plaintiff. (See Dkt. 149, Motion at 3; Dkt. 149-1, Memorandum in Support of Unopposed Motion for Final Approval of Class Action Settlement ("Memo") at 1; Dkt. 146, Fees Motion at 2).

**BACKGROUND**

I. PLAINTIFF'S CLAIMS.

Ulta sells and provides salon products and services in stores located throughout the United States, including approximately 69 stores within California. (See Dkt. 141, PAO at 2). With the exception of each store's General Manager, all store employees are hourly-paid, non-exempt employees. (See id.). Plaintiff contends that Ulta requires all hourly employees to undergo an exit inspection – also known as a "bag check" – each time they leave the store, whether for a rest break, meal break, or at the end of a shift. (See id.). Ulta's bag check policy is contained in a number of company manuals and handbooks. (See id. ). For example, the "New Hire Orientation" section of the Ulta Employee Handbook requires all employees to have their "[b]ag checked at the front" of the store before leaving, (see id.), and states that employees must "[n]ever leave the building without being checked out by a manager[.]" (Id.). Plaintiff asserts that Ulta has systematically undercompensated employees through its bag check policies by requiring employees to spend unpaid off-the-clock time inside the stores waiting for exit inspections. (See id. at 2-3).

II. SETTLEMENT AGREEMENT.

On August 4, 2016, the parties, "[a]fter a full day of mediation, at which they engaged in good-faith, arms-length bargaining, and realistically assessed the strengths and weaknesses of their positions," reached a settlement. (See 141, PAO at 3). On November 4, 2016, the parties filed a Joint Stipulation of Settlement and Release memorializing the terms of the settlement. (See id.). On December 16, 2016, the parties filed an Amended Joint Stipulation of Settlement and Release (Dkt. 140, "Settlement Agreement"). (See Dkt. 138, Court's Order of December 9, 2016) (requiring the parties to file "a revised settlement agreement addressing the court's concerns as stated on the record"); Dkt. 141, PAO at 3).

The Settlement Agreement defines the settlement class as "[a]ll persons employed in California by Ulta Salon, Cosmetics & Fragrance, Inc. on a nonexempt basis between March 2, 2008, through the date of preliminary Court approval of the Settlement or through January 27,

2017, whichever date first occurs."[1] (See Dkt. 140, Settlement Agreement at ¶ 14; Dkt. 141, PAO at 3). Under the settlement, Ulta will pay $2,700,000 into a common fund, which will first be used to pay for attorney's fees, costs, service award, employer and employee payroll taxes, and claims administration expenses. (See Dkt. 140, Settlement Agreement at ¶ 26; Dkt. 141, PAO at 4). Pending court approval, the settlement provides for an incentive payment to Moore of up to $30,000 for her service as class representative. (See Dkt. 140, Settlement Agreement at ¶ 34; Dkt. 141, PAO at 4). The settlement also provides that Ulta will not object to class counsel's request for attorney's fees of no more than 30% of the common fund plus $30,000 in costs and expenses. (See Dkt. 140, Settlement Agreement at ¶ 42; Dkt. 141, PAO at 4). The parties proposed that the settlement be administered by CPT, (see Dkt. 140, Settlement Agreement at ¶ 3; Dkt. 141, PAO at 4), whose fees would be no more than $90,000. (See Dkt. 140, Settlement Agreement at ¶ 35; Dkt. 141, PAO at 4). After all these payments are deducted, the remaining amount in the common fund (the "Net Settlement Amount") will be used to pay all timely and valid claims submitted by class members. (See Dkt. 140, Settlement Agreement at ¶¶ 26-27 & 30; Dkt. 141, PAO at 4). If the court approves a service award, attorney's fees, and/or costs in an amount less than that provided by the settlement, the difference will revert to the Net Settlement Amount. (See Dkt. 140, Settlement Agreement at ¶¶ 34 & 42; Dkt. 141, PAO at 4). CPT will then calculate proportional individual settlement awards for each settlement class member. (See Dkt. 140, Settlement Agreement at ¶ 30(a)(i); Dkt. 141, PAO at 4). The awards will be determined by dividing the Net Settlement Amount by the total number of workweeks for the entire settlement class. (See Dkt. 140, Settlement Agreement at ¶ 30(a)(i); Dkt. 144, Joint Stipulation for Supplemental Order Regarding Preliminary Approval of Class Action Settlement ("Stip.") at 2; Dkt. 145, Court's Order of April 7, 2017). This figure will then be multiplied by the number of workweeks worked by each class member. (See Dkt. 140, Settlement Agreement at ¶ 30(a)(i); Dkt. 141, PAO at 4). Any payments that cannot be delivered will be redistributed to the other

---

[1] As noted, the court granted preliminary approval of the settlement on December 29, 2016. (See Dkt. 141, PAO).

settlement class members or, if the amount to be redistributed is less than $25,000, donated to the Los Angeles County Bar Association's Counsel for Justice program under the cy pres doctrine. (See Dkt. 140, Settlement Agreement at ¶¶ 27-29; Dkt. 141, PAO at 4).

As of the date of the settlement, the parties estimated that the settlement class included approximately 13,080 individuals. (See Dkt. 140, Settlement Agreement at ¶ 14; Dkt. 141, PAO at 3). However, the Settlement Agreement provides that if the class ultimately contains more than 15,700 individuals, "then the parties agree to discuss whether an additional settlement amount is appropriate." (See Dkt. 140, Settlement Agreement at ¶ 14). Subsequently, after the court preliminarily approved the settlement, the parties filed a stipulation[2] indicating that they discovered that there were 16,226 class members and that, as a result, they agreed to increase the Gross Settlement Amount by $90,000. (See Dkt. 144, Stip. at 2). Thus, the Gross Settlement Amount is $2,790,000. (Id.; see Dkt. 145, Court's Order of April 7, 2017). Due to the unanticipated increase in the class size, CPT increased its estimated fees to $112,500. (See Dkt. 144, Stip. at 2; Dkt. 145, Court's Order of April 7, 2017).

III. NOTICE TO THE CLASS.

CPT, the court-appointed settlement administrator, has implemented the notice program previously approved by the court. (See Dkt. 149-1, Memo at 6; Dkt. 149-3, Thompson Decl. at ¶¶ 3-8); Dkt. 141, PAO at 11-13 (approving notice program)). On April 17, 2017, after updating addresses via a National Change of Address ("NCOA") search, CPT mailed Notice Packets[3] to

---

[2] The court approved the stipulation and granted the parties' request to continue the final fairness hearing to July 6, 2017. (See Dkt. 145, Court's Order of April 7, 2017). The stipulation also noted that the numerator and denominator of the "Workweek Value" was inadvertently inverted. (See Dkt. 144, Stip. at 2). Although plaintiff's counsel repeats the error regarding the determination of the Workweek Value in the Motion (see Dkt. 149-1, Memo at 4), the Class Notice reflected the correct formulation. (See Dkt. 149-3, Declaration of Carole Thompson with Respect to Settlement Administration and Class Notice ("Thompson Decl."), Exh. A (Class Notice) at 3) ("The portion of the Net Settlement Amount payable to each Class Participant in the Settlement Class will be determined by dividing the Net Settlement Amount by the total number of workweeks for the entire Settlement Class, resulting in the Workweek Value; and then multiplying the Workweek Value by the number of workweeks worked by each Settlement Class Member[.]").

[3] Each Notice Packet consisted of the Class Notice, Claim Form, and Exclusion Form. (See Dkt. 149-3, Thompson Decl. at ¶ 4).

16,227 class members. (See Dkt. 149-3, Thompson Decl. at ¶¶ 6-7 & Exh. A (Notice Packet)). Subsequently, 2,503 Notice Packets were re-mailed following a skip trace search, receipt of a forwarding address provided by the post office, or request from counsel or class members. (See id. at ¶ 8). A total of 260 Notice Packets were deemed undeliverable. (See id.).

As of June 14, 2017, CPT received one Claim Form from a class member with an undeliverable address, one deficient response (both claim form and exclusion form submitted), 20 requests for exclusion, and no objections.[4] (See Dkt. 149-3, Thompson Decl. at ¶¶ 9-13). According to CPT, "a total of 15,947 Class Members will be sent a Settlement payment, which represents a 98.3% participation rate." (Id. at ¶ 14). CPT estimates that the average settlement payment will be $111.65, and the highest claimed amount will be approximately $1,073.96. (Id. at ¶ 15).

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 23 provides that "the claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The primary concern of [Rule[5] 23(e)] is the protection of th[e] class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F., 688 F.2d 615, 624 (9th Cir. 1982), cert. denied, 459 U.S. 1217 (1983). Whether to approve a class action settlement is "committed to the sound discretion of the trial judge[,]" Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir.), cert. denied, 506 U.S. 953 (1992), who must examine the settlement for "overall fairness." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998). The court may not "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." Id. (internal

---

[4] During the final approval hearing, counsel for the parties indicated that several additional requests for exclusion were received after the deadline for class members to request exclusion. Class members were given 60 days to request exclusion. (See Dkt. 149-3, Thompson Decl. at ¶ 7 & Exh. A (Notice Packet) at 5; Dkt. 149, Memo at 5-6). Under the circumstances here, the court will not consider the untimely requests for exclusion. See, e.g., Gould v. Motel 6, Inc., 2014 WL 12571421, *2 (C.D. Cal. 2014) ("Because the objections are untimely, the Court need not consider the merits of objectors' arguments.").

[5] All "Rule" references are to the Federal Rules of Civil Procedure.

quotation marks and citation omitted).

In order to approve a settlement in a class action, the court must conduct a three-step inquiry. First, it must assess whether defendants have met the notice requirements under the Class Action Fairness Act ("CAFA"). See 28 U.S.C. § 1715(d). Second, it must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied. Finally, it must conduct a hearing to determine whether the settlement agreement is "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2); Staton v. Boeing Co., 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard); Adoma v. Univ. of Phoenix, Inc., 913 F.Supp.2d. 964, 972 (E.D. Cal. 2012) (conducting three-step inquiry).

In determining whether a settlement agreement is fair, adequate, and reasonable, the court must weigh some or all of the following factors: "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) (quoting Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)).

However, when "a settlement agreement is negotiated prior to formal class certification, consideration of these eight . . . factors alone is not enough to survive appellate review." Bluetooth, 654 F.3d at 946 (emphasis in original). This is because, "[p]rior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement." Id. District courts, therefore, also must determine "that the settlement is not the product of collusion among the negotiating parties." Id. at 947 (internal quotation and alteration marks omitted). In making that determination, courts should look for signs of collusion, including "(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded[;]" "(2) when the parties negotiate a `clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds[;]" and "(3) when the parties arrange for fees not awarded to revert to

defendants rather than be added to the class fund[.]" Id. (internal quotation marks and citations omitted).

## DISCUSSION

I. FINAL APPROVAL OF CLASS SETTLEMENT.

    A.    Class Action Fairness Act.

CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" 28 U.S.C. § 1715(b). The statute provides detailed requirements for the contents of such a notice, which must include, among other things, "any proposed or final notification to class members[,]" and "any proposed or final class action settlement[.]" 28 U.S.C. §§ 1715(b)(3) & (4). The court may not grant final approval of a class action settlement until the CAFA notice requirement is met. See id. at § 1715(d) ("An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served with the notice required under [28 U.S.C. § 1715(b)]").

Here, defendant provided the required CAFA notice on December 12, 2016. (See Dkt. 139, Declaration of Kai-Ching Cha Re: CAFA Notice in Support of Defendant's Non-Opposition to Plaintiff's Motion for Preliminary Approval of Class Action Settlement at ¶ 2). There have been no objections to the settlement from the state and federal officials that received the CAFA notice. (See, generally, Dkt.).

    B.    Class Certification.

Because the court granted plaintiff's motion to certify the class, (see Dkt. November 16, 2015, at 57; see also Dkt. 141, PAO at 3 & 4-5 n. 1), and circumstances have not changed, the court reconfirms its order certifying the class for settlement purposes under Rule 23(e). See In re Apollo Grp. Inc. Sec. Litig., 2012 WL 1378677, *4 (D. Ariz. 2012) ("The Court has previously certified, pursuant to Rule 23 of the Federal Rules of Civil Procedure, and hereby reconfirms its order certifying a class.").

C.  Rule 23(c) Notice Requirements.

Class actions brought under Rule 23(b)(3) must satisfy the notice provisions of Rule 23(c)(2) and, upon settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) prescribes the "best notice that is practicable under the circumstances, including individual notice" of particular information. See Fed. R. Civ. P. 23(c)(2)(B) (enumerating notice requirements for classes certified under Rule 23(b)(3)).

After undertaking the required examination, the court approved the form of the proposed class notice. (See Dkt. 141, PAO at 11-13). As discussed above, the notice program has been fully implemented by CPT. See supra Background at § III. Accordingly, based on its prior findings and the record before it, the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 141, PAO at 11-13; see also Dkt. 149-3, Thompson Decl. at ¶ 3-14 & Exh. A (Notice Packet)).

D.  Whether the Class Settlement is Fair, Adequate and Reasonable.

1.  **The Strength of Plaintiff's Case, and the Risk, Expense, Complexity, and Duration of Further Litigation**.

In evaluating the strength of the case, the court should assess "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach [a settlement]." Adoma, 913 F.Supp.2d at 975. "In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required." Id. at 976.

Here, plaintiff recognizes the substantial risks involved in continuing this litigation and the "difficult and expensive hurdles" she faced in overcoming defendant's defenses and establishing damages on a classwide basis. (See Dkt. 149-1, Memo at 8; see also Dkt. 141, PAO at 8-9 (noting substantial litigation risks)). According to plaintiff, "proof of liability and damages would both hinge on statistical sampling[,]" the costs of which "would be astronomical." (See Dkt. 149-1,

Memo at 10; Dkt. 149-2, Declaration of Timothy Hobbs ("Hobbs Decl.") at ¶ 11). Plaintiff's counsel consulted a statistician who advised counsel that to "withstand challenge, a statistical modeling of damages would require a sample size of between 200-300 respondents, who must be interviewed or provide a declaration, with a participation rate in excess of 90%." (Dkt. 149-2, Hobbs Decl. at ¶ 11). Such an undertaking would pose "immense logistical burdens[.]" (Id.). Moreover, plaintiff was concerned that defendant could succeed in having the class de-certified given its evidence that "each manager was responsible for implementing the bag check protocol, and that many managers conducted inspections prior to clock out[.]" (Dkt. 149-1, Memo at 9-10; Dkt. 149-2, Declaration of Dennis P. Wilson ("Wilson Decl.") at ¶ 40; Dkt. 149-2, Hobbs Decl. at 13 ("Defense counsel had very strong arguments related to the lack of commonality of the actual bag check at various stores and employees' work duties[.]")).

In addition to the risks faced in continuing the litigation, the resolution of the action would be lengthy, complex, and impose significant costs on all parties. (See Dkt. 149-1, Memo at 10-12). Continued litigation "would require substantial additional preparation and discovery . . . involv[ing] the deposition[s] of up to 100 class members, and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports." (Id. at 10). Given that this case has been ongoing for more than five years, and that any decision on the merits would likely be appealed, (see id. at 11-12), the court finds it significant that the class members will receive "immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." Nat'l Rural Telecommc'ns. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 526 (C.D. Cal. 2004). In short, the court finds that this factor supports a finding that the settlement is fair, adequate, and reasonable.

2. **The Risk of Maintaining Class Action Status Through Trial**.

Although the court certified a class prior to settlement, (see Dkt. 115, Court's Order of November 16, 2015, at 56-57; see also Dkt. 141, PAO at 4 n. 1), plaintiff nonetheless faced the risk that the court could de-certify the class, either by way of a motion to de-certify or on its own motion. Thus, this factor weighs in favor of granting final approval.

### 3. **The Amount Offered in Settlement**.

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes." Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). In granting preliminary approval of the settlement, the court concluded that the settlement benefits were fair, adequate and reasonable, and compelling in light of the litigation risks in the case.[6] (See Dkt. 141, PAO at 8-9). Accordingly, this factor also weighs in favor of final approval.

### 4. **The Extent of Discovery Completed and the Stage of Proceedings**.

"A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." Nat'l Rural Telecommc'ns. Coop., 221 F.R.D. at 528. "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." Id. at 527. The court previously examined these factors at length, noting that the parties had conducted extensive discovery, (see Dkt. 141, PAO at 6-7), and that class counsel had "conducted a thorough investigation into the facts of this class action," and "considered their own and the opposing parties' positions," (id.), which enabled the parties to develop "a sound basis for measuring the terms of the settlement against the risks of continued litigation[.]" (Id. at 7). The court is persuaded that the parties entered the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions. See Nat'l Rural Telecommc'ns, 221 F.R.D. at 527-28 (noting that parties' examination of the factual and legal bases of the disputed claims through completion of discovery "strongly militates in favor of the Court's approval of the settlement"); Barbosa v. Cargill Meat Solutions Corp., 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("What is required is that sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently.") (internal quotation marks omitted). In short, this factor also supports approval of the settlement.

---

[6] The court granted the parties' stipulation to increase the settlement amount in light of the discovery of additional class members. (See Dkt. 144, Stip. at 1-2; Dkt. 145, Court's Order of April 7, 2017).

11

### 5. **The Experience and Views of Counsel**.

"Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation." Nat'l Rural Telecommc'ns, 221 F.R.D. at 528 (internal quotation marks and citation omitted). The court has previously noted that class counsel is adequate. (See Dkt. 115, Court's Order of November 16, 2015, at 26). Moreover, according to plaintiff's counsel, the "settlement represents a substantial benefit[.]" (Dkt. 149-2, Wilson Decl. at ¶ 43; Dkt. 149-2, Hobbs Decl. at ¶ 15; see also Dkt. 149-2, Declaration of Alejandro Blanco ("Blanco Decl.") at 7 (stating that the settlement "was fair and in the best interests of the class")). Thus, this factor also supports approval of the settlement.

### 6. **The Presence of a Governmental Participant**.

There is no government participant in this matter. Accordingly, this factor is inapplicable. See Wren v. RGIS Inventory Specialists, 2011 WL 1230826, *10, supplemented by 2011 WL 1838562 (N.D. Cal. 2011) (noting that lack of government entity involved in case rendered this factor inapplicable to the analysis).

### 7. **The Reaction of Class Members to the Proposed Settlement**.

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecommc'ns, 221 F.R.D. at 529. Here, the reaction of the class has been positive. While approximately 15,950 class members received direct mail notice, (see Dkt. 149-1, Memo at 6; Dkt. 149-3, Thompson Decl. at ¶ 14), only 20 individuals timely requested exclusion, (see Dkt. 149-1, Memo at 6; Dkt. 149-3, Thompson Decl. at ¶ 12), and significantly, there were no objections to the settlement. (See Dkt. 149-3, Thompson Decl. at ¶ 13). The lack of objections and the small number of exclusions support approval of the settlement. See, e.g., Franco v. Ruiz Food Prods., Inc., 2012 WL 5941801, *14 (E.D. Cal. 2012) (finding this factor weighed in favor of approval when only two out of 2,055 class members – less than one percent – opted out, and there were no objections to the settlement); Gong-Chun v.

1  Aetna Inc., 2012 WL 2872788, *16 (E.D. Cal. 2012) (settlement approved when less than two
2  percent of the class members opted out and no objections were received); Barcia v. Contain-A-
3  Way, Inc., 2009 WL 587844, *4 (S.D. Cal. 2009) (finding this factor weighed in favor of approval
4  of settlement when out of the 2,385 class members, there were no objections and only 56 class
5  members opted out).
6  II.     ATTORNEY'S FEES, COSTS AND SERVICE AWARD.
7          A.      Attorney's Fee Award.
8          The Settlement Agreement provides that class counsel will apply for an attorney's fees
9  award not to exceed 30% of the common fund. (See Dkt. 140, Settlement Agreement at ¶ 42).
10 Class counsel now seek 25% of the adjusted gross settlement fund, which amounts to $697,500.
11 (See Dkt. 146, Fees Motion at 6, 8 & 14).
12         Rule 23(h) provides that, "[i]n a certified class action, the court may award reasonable
13 attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."
14 Fed. R. Civ. P. 23(h). In diversity actions such as this one, the Ninth Circuit applies state law to
15 determine the right to fees and the method for calculating fees. See Mangold v. Cal. Public Util.
16 Commc'n, 67 F.3d 1470, 1478 (9th Cir. 1995) ("Existing Ninth Circuit precedent has applied state
17 law in determining not only the right to fees, but also in the method of calculating the fees.");
18 Rodriguez v. Disner, 688 F.3d 645, 653 n. 6 (9th Cir. 2012) ("If . . . we were exercising our
19 diversity jurisdiction, state law would control whether an attorney is entitled to fees and the method
20 of calculating such fees.").
21         The California Supreme Court recently held that courts have discretion to choose among
22 two different methods for calculating a reasonable attorney's fees award. See Laffitte v. Robert
23 Half Int'l Inc., 1 Cal.5th 480, 504 (2016) ("The choice of a fee calculation method is generally one
24 within the discretion of the trial court, the goal under either the percentage or lodestar approach
25 being the award of a reasonable fee to compensate counsel for their efforts."); see also Bluetooth,
26 654 F.3d at 942 ("courts have discretion to employ either the lodestar method or the percentage-
27 of-recovery method"). "The lodestar method, or more accurately the lodestar-multiplier method,
28 calculates the fee by multiplying the number of hours reasonably expended by counsel by a

reasonable hourly rate. Once the court has fixed the lodestar, it may increase or decrease that amount by applying a positive or negative multiplier to take into account a variety of other factors, including the quality of the representation, the novelty and complexity of the issues, the results obtained, and the contingent risk presented." Laffitte, 1 Cal.5th at 489 (internal quotation marks omitted). "The percentage method calculates the fee as a percentage share of a recovered common fund or the monetary value of plaintiffs' recovery." Id. "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." Bluetooth, 654 F.3d at 942; see Laffitte, 1 Cal.5th at 489; Glass v. UBS Fin. Servs., Inc., 2007 WL 221862, *14 (N.D. Cal. 2007), aff'd, 331 F.App'x 452 (9th Cir. 2009) ("As always, when determining attorneys' fees, the district court [is] guided by the fundamental principle that fee awards out of common funds be reasonable under the circumstances.").

"Because the benefit to the class is easily quantified in common-fund settlements," the court will exercise its discretion "to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar." Bluetooth, 654 F.3d at 942. "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent and has endorsed the federal benchmark of 25 percent." Smith v. CRST Van Expedited, Inc., 2013 WL 163293, *5 (S.D. Cal. 2013); see Chavez v. Netflix, Inc., 162 Cal.App.4th 43, 66 n. 11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."); In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 n. 13 (2009) ("A fee award of 25 percent is the benchmark award that should be given in common fund cases.") (internal quotation and alteration marks omitted).

The 25 percent benchmark is the starting place and the court must determine the appropriate percentage by "tak[ing] into account all of the circumstances of the case." Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002). In general, the court evaluates the following factors in determining the benchmark percentage to be applied: (1) the results achieved for the class; (2) the complexity of the case; (3) the skill, experience and performance of counsel; (4) the risk of nonpayment; and (5) the reaction of the class. See id. at 1048-49; Bluetooth, 654

F.3d at 941-42 & n. 7; Laffitte, 1 Cal.5th at 504 (determining reasonableness of percentage fee "by obtaining additional information from class counsel on the risks and potential value of the litigation;" the "contingency, novelty and difficulty" of the case; and "the skill shown by counsel").

### 1. **The Result Achieved for the Class**.

"The result achieved is a significant factor to be considered in making a fee award." In re Heritage Bond Litig., 2005 WL 1594403, *19 (C.D. Cal. 2005); see Hensley v. Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983) ("the most critical factor is the degree of success obtained"); Bluetooth, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."). As the court previously found, the settlement benefits were fair, adequate and reasonable, and compelling in light of the litigation risks in the case. (See Dkt. 141, PAO at 8-9); see supra at § I.D.3. Moreover, the settlement results in an average settlement amount of approximately $111.65, with the highest payment being approximately $1,073.96. (See Dkt. 149-3, Thompson Decl. at ¶ 15). Under the circumstances, the court concludes that the results obtained for the class support an award of attorney's fees.

### 2. **Complexity of the Case**.

"Courts have recognized that the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award." In re Heritage Bond Litig., 2005 WL 1594403 at *20. Counsel do not directly address this factor, instead focusing on the litigation risks faced by the class and the prospect of not recovering anything. (See Dkt. 146, Fees Motion at 9). However, since counsel is seeking only 25 percent of the common fund, this factor does not undermine the fee request.

### 3. **Class Counsel's Skill, Experience, and Performance**.

The "prosecution and management of a complex . . . class action requires unique legal skills and abilities." In re Omnivision Techs., Inc., 559 F.Supp.2d 1036, 1047 (N.D. Cal. 2008). Here, as the court previously determined, class counsel was adequate, (see Dkt. 115, Court's Order of November 16, 2015, at 26); see also supra at § I.D.5, and prosecuted this case over a five year period. (See Dkt. 1, NOR at Ex. A (Complaint) (filed March 2, 2012). This factor also supports class counsel's attorney's fees request.

4. **The Risk of Nonpayment**.

"Courts consistently recognize that the risk of non-payment or reimbursement of expenses is a factor in determining the appropriateness of counsel's fee award." In re Heritage Bond Litig., 2005 WL 1594403, at *21. Here, class counsel "took the case on a contingency basis, and invested substantial effort and money with no guarantee of recovery." (Dkt. 146, Fees Motion at 9). The contingent nature of the work, and the risk class counsel took in advancing costs, also weigh in favor of granting plaintiff's fee request. See Barbosa, 297 F.R.D. at 449 ("Like this case, where recovery is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be appropriate."); see also Graham v. Daimler Chrysler Corp., 34 Cal.4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed. The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal quotation marks omitted).

5. **Reaction of the Class**.

The reaction of the class to the settlement has been positive. As previously noted, only 20 class members timely requested exclusion, and there were no objections to the settlement. (See Dkt. 149-3, Thompson Decl. at ¶¶ 12-13; see, generally, Dkt.). The positive reaction of the class members also supports the fee application.

6. **Conclusion**

In short, consideration of the foregoing factors supports the request for attorney's fees. In addition, the court is satisfied that a lodestar "cross-check" is not required. See Laffitte, 1 Cal.5th at 504 (holding that the court has discretion to "double check the reasonableness of the percentage fee through a lodestar calculation"); In re Consumer Privacy Cases, 175 Cal.App.4th 545, 557 (2009) ("While the court has discretion to [conduct a Lodestar cross-check] where appropriate, it is not required."). Thus, the court finds that the requested fee award is fair and reasonable.

B. Costs.

The Settlement Agreement provides that class counsel may seek reimbursement of up to $30,000 in costs. (See Dkt. 140, Settlement Agreement at ¶ 42). Class counsel seek $20,753.43

in costs. (See Dkt. 146, Fees Motion at 13-14; Dkt. 146-1, Declaration of Dennis P. Wilson at ¶ 39; Dkt. 146-1, Declaration of Timothy Hobbs at ¶ 24; Dkt. 146-1, Declaration of Alejandro Blanco at ¶ 11). The court finds that the costs incurred by class counsel over the course of this litigation are reasonable, and therefore awards a total of $20,753.43 in costs.

  C.  Class Representative Incentive Award.

"[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." Staton, 327 F.3d at 977; see Wren, 2011 WL 1230826, at *31 ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards."). Here, class counsel request that the court grant plaintiff an incentive payment in the amount of $5,000.00. (See Dkt. 146, Fees Motion at 4-5; Dkt. 140, Settlement Agreement at ¶ 34 (authorizing payment of up to $30,000)).

In its order granting preliminary approval of the settlement, the court undertook a thorough examination of the fairness and adequacy of the incentive payment at issue, applying the careful scrutiny required in this Circuit. (See Dkt. 141, PAO at 10-11); see also Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1163 (9th Cir. 2013) (reversing the district court's class action settlement approval and instructing "district courts to scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives"). Based on its review of the record, the court determined that an award of $5,000 was appropriate and did not create a conflict of interest between the named plaintiff and absent class members. (See Dkt. 141, PAO at 11). The court therefore concludes that the requested incentive payment is fair and reasonable, and is hereby approved.

**CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. The Unopposed Motion for Final Approval of Class Action Settlement **(Document No. 149)** is **granted** as set forth herein.

2. The court hereby **grants final approval** to the parties' Settlement Agreement ("Settlement Agreement") **(Document No. 140)**. The court finds that the Settlement Agreement

is fair, adequate and reasonable, appears to be the product of arm's-length and informed negotiations, and treats all members of the class fairly. The parties are ordered to perform their obligations pursuant to the terms of the Settlement Agreement and this Order.

3. Plaintiff's Unopposed Motion for Attorneys' Fees and Costs and Class Representative Enhancement **(Document No. 146)** is **granted** as set forth herein.

4. The settlement class is certified under Federal Rule of Civil Procedure 23(c): All persons employed in California by Ulta Salon, Cosmetics & Fragrance, Inc. on a nonexempt basis between March 2, 2008, through December 29, 2016, who did not properly and timely request exclusion pursuant to the procedures specified in the Settlement Agreement.

5. The form, manner, and content of the Class Notice meet the requirements of Federal Rules of Civil Procedure 23(c)(2).

6. Plaintiff Sarah Moore shall be paid a service payment of $5,000 in accordance with the terms of the Settlement Agreement.

7. Class counsel shall be paid $697,500 in attorney's fees and $20,753.43 in costs in accordance with the terms of the Settlement Agreement.

8. The settlement administrator, CPT, shall be paid up to $112,500 for its fees and expenses in connection with the administration of the Settlement Agreement.

9. The court approves the designation of the Los Angeles County Bar Association's Counsel for Justice program as the cy pres beneficiary pursuant to the Settlement Agreement.

10. All class members who did not validly and timely request exclusion from the settlement have released their claims, as set forth in the Settlement Agreement, against any of the released parties (as defined in the Settlement Agreement).

11. Except as to any class members who have validly and timely requested exclusion, this action is **dismissed with prejudice**, with all parties to bear their own fees and costs except as set forth herein and in the prior orders of the court.

12. Without affecting the finality of this Order in any way, the court hereby retains jurisdiction over the parties, including class members, for the purpose of construing, enforcing, and administering the Order and Judgment, as well as the Settlement Agreement itself.

13. Judgment shall be entered accordingly.

Dated this 25th day of July, 2017.

                                                  /s/
                                Fernando M. Olguin
                             United States District Judge